IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| IN RE: SUBPOENA TO DISINFORMATION INDEX, INC. *Subpoena Recipient* <br><br> IN CONNECTION WITH: <br><br> THE DAILY WIRE, LLC, *ET AL.*, *PLAINTIFFS*, <br><br> v. <br><br> DEPARTMENT OF STATE, *ET AL.*, *DEFENDANTS*. <br><br> PENDING IN: <br><br> THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TEXAS <br><br> CASE NO.: 6:23-CV-00609 | CASE NO. 1:24MC00963 |

**PLAINTIFFS' MOTION TO COMPEL DISCOVERY FROM SUBPOENA RECIPIENT DISINFORMATION INDEX, INC.**

Plaintiffs sued Defendants seeking preliminary and permanent injunctive relief to prevent Government Defendants from exceeding their statutory authority and abridging the speech of the Media Plaintiffs. Subpoena recipient, Disinformation Index, Inc. (DI), a beneficiary of Defendants' actions, has refused to date to produce most documents identified in a subpoena Plaintiffs served on July 17, 2024. *See* Exh. A. Plaintiffs move to compel discovery.

### I.  FACTUAL BACKGROUND

State Department and Global Engagement Center (GEC), which are statutorily constrained to foreign affairs, are funding and promoting companies such as DI that create technology that damages the reputation of disfavored American media outlets by labeling them "risky," unreliable, or purveyors of "disinformation." *See Daily Wire v. Dep't of State*, No. 6:23-

1

cv-609 (E.D. Tex.) Complaint, Exh. H; Mot. for Prelim. Inj. (MPI), Exh. N. Companies such as DI generate blacklists or other tools "for the purpose of discrediting and demonetizing the disfavored press and redirecting money and audiences to news organizations that publish" viewpoints favored by Defendants. Complaint, Exh. H at 2-3, ¶ 3. Defendants' *ultra vires* action damages the State of Texas's sovereign interests and the Media Plaintiffs' reputation, circulation, and advertising opportunities, and violates the Media Plaintiffs' First Amendment rights. *See generally* Exs. H, N.

As an example, GEC funded a $100,000 prize awarded as part of GEC's 2021 "U.S.-Paris Tech Challenge" to DI's affiliate, Disinformation Index, Ltd., which, in partnership with DI, does business under the name of Global Disinformation Index (GDI). During that Tech Challenge, GDI pitched its "technology that purported to assess the 'disinformation risk' of media outlets," explaining that its risk-rating technology seeks to redirect ad dollars from "disinformation" toward "quality journalism." GDI "explained that the award, in addition to allowing GDI to increase its 'language coverage capability,' would also allow GDI to expand its risk assessments into video news and strengthen GDI's 'infrastructure' to 'support market-wide deployment, . . .'" of its technology. In closing out the Tech Challenge, Patricia Watts of GEC championed GDI and other censorship enterprises, saying: "To all of you listening, we encourage you to engage with all eight companies featured during the tech challenge to determine if there are opportunities to support their counter-disinformation work," and telling the audience to "please do reach out to them or to us." Complaint, Exh. H at 28-29, ¶¶ 125-132.

Additionally, the State Department, through the National Endowment for Democracy (NED), funneled over $300,000 to DI to purportedly "strengthening digital integrity in the digital space." *Id.* at 30, ¶ 135. And NED awarded over $200,000 in State Department funds to DI's related foundation, AN Foundation. *Id.* at 30, ¶ 138. GEC also promoted GDI in emails broadly distributed to the tech sector, including to Twitter (now X), as well as to more than a thousand users of the Defendants' Disinfo Cloud platform. GEC featured GDI in its Disinfo Cloud Digest and the GEC-funded Disinfo Cloud project used its Twitter feed to promote GDI. GEC further

promoted GDI in meetings with YouTube, Google, and Zoom, identifying GDI as a third-party resource of note.

DI and Disinformation Index, Ltd., share the GDI website which highlights their various products including their "core output," the Dynamic Exclusion List—ostensibly a list "of global news publications rated high risk for disinformation." The Exclusion List is licensed to "ad tech companies and platforms." Both Oracle and the Microsoft-owned ad company Xandr subscribed to GDI's blacklist, with Xandr in 2022, informing companies it was adopting GDI's exclusion list to avoid placing ads with outlets that are 'morally reprehensible or patently offensive,' lack 'redeeming social value,' or that 'could include false or misleading information.'" *Id.* at 24, ¶¶ 111-12. While Plaintiffs do not have access to the Exclusion List, it is reasonable to infer that it brands Media Plaintiffs as websites with the "highest risk" because another DI product, "Media Market Review," identifies The Federalist and The Daily Wire as in the top ten of "riskiest" outlets.

## II.   PROCEDURAL BACKGROUND

After filing their Complaint, Plaintiffs filed a Motion for Expedited Discovery and Motion for Preliminary Injunction. Defendants opposed both Motions and filed a Motion to Dismiss, arguing, among other things, that Plaintiffs could not establish any injury was traceable to Defendants' *ultra vires* and unconstitutional actions. The district court denied Defendants' Motion to Dismiss, concluding that the Complaint sufficiently alleged the injuries were the "predictable result of Defendants' deliberate efforts to market and promote the censorship tools and technologies to 'the tech industry, the private sector, and academia,'" and that "the third parties deplatformed and demoted Media Plaintiffs as a result." Order, Exh. I at 27. Thereafter, the district court denied Plaintiffs' Motion for Preliminary Injunction, without prejudice, to allow Plaintiffs to obtain discovery evidence to support their claims. Order, Exh. O. Here, the Court stressed it had "previously granted Plaintiffs' motion for expedited preliminary-injunction discovery and granted the parties leave to supplement their existing briefing on the preliminary-injunction motion following that discovery." *Id.* The Court's order granting preliminary-

injunction related discovery expressly allowed Plaintiffs to serve five subpoenas. Order, Exh. J at 6.

A subpoena was served on DI on May 17, 2024, Exhs. D, L, and on June 17, 2024, DI served an untimely Response and Objections, Exh. E. Ironically, DI objected that the subpoena had been served too late. *See id.* at 2. DI's timeliness objection was both incorrect and elevated form-over-function as the parties had completed their Rule 26 conference, permitting Plaintiffs to issue a subpoena under standard discovery rules. *See* 7/2/24 Letter, Exh. F at 1. Nearly all of DI's remaining objections were general boilerplate. *See generally* Exh. E. Plaintiffs and DI conferred telephonically on June 26, 2024, reaching some agreements as to DI's various objections. *See* 7/2/24 Letter, Exh. F at 1-3.[1] Plaintiffs agreed to narrow their requests and served a new subpoena to address DI's timing objection and to eliminate any facial overbreadth. *See id.* at 1. Plaintiffs further agreed to seek to add an "attorneys' eyes only" designation to the protective order to safeguard DI's proprietary or otherwise highly sensitive data. *See id.* at 2. Plaintiffs also agreed to provide search terms to help facilitate DI's search. *See id.* at 3-4.

On July 17, 2024, Plaintiffs served a new subpoena reducing the number of requests from ten to five and suggesting search terms for the three requests that were not directed toward the Tech Challenge grant Defendants provided DI. *See* Subpoena, Exh. A. The first request seeks documents relating to DI's communications and involvement with the Defendants and social media companies. *Id.* at 10. The second and third requests relate to the Tech Challenge grant; the fourth request relates to any other financial award DI obtained from Defendants; and the final request seeks documents related to products DI offers where such documents reference the Media Plaintiffs or related persons and topics. *Id.* at 11-13. To further address DI's prior objections, Plaintiffs' new subpoena specified that DI need not produce documents authored by or provided to the Defendants. *Id.* at 9.

---

[1] Disinfo Index disagreed with certain characterizations in Plaintiffs' letter, but those disagreements are not relevant to the current dispute. *See* Exh. G.

4

On July 31, 2024, DI served objections to Plaintiffs' narrowed subpoena. *See* Exh. B. DI did not produce nor agree to produce any documents. DI began its Response and Objections with twelve pages and 34 paragraphs of general objections followed by supposed specific objections which all began with boilerplate "vague, ambiguous, overbroad, and not proportional" objections. *See* 7/31/24 Objections, Exh. B. DI's objections were asserted "to the extent that," they applied, without specifying which objection DI was relying on to withhold documents nor offering reasonable interpretations of allegedly vague terms. *See generally id.* Further, while generally objecting based on "undue burden," DI provided no explanation as to the nature or degree of the burden. DI also reiterated objections inconsistent with text of subpoena and the prior conferral. *Compare id.* at 2-13 *with* 6/17/24 Objections, Exh. E. For example, DI responded to Plaintiffs' provision of suggested search terms by characterizing the suggested terms as imposing a new and significant burden. *See* 7/2/24, Letter, Exh. F at 2-4; 7/31/24 Objections, Exh. B at 17-22.

Plaintiffs and DI had another telephone conferral on August 7, 2024. *See* 8/13/24 Letter, Exh. C. DI reiterated its claim that the subpoena was burdensome and overbroad, but DI had no knowledge, such as numbers of custodians, location and types of documents, method of collection, or other time or effort involved in the collection and review process, that Plaintiffs could evaluate to reduce any alleged burden. *Id.* Plaintiffs agreed not to contest DI's limiting of the responsive period to 2020 through 2022, and DI tentatively suggested it might provide some documents on a rolling basis over several weeks in response to Requests 2-3 but did not commit to do so. *See id.* at 2. Plaintiffs summarized the conferral, requested a response by August 16, and indicated their plan to file this motion. *See id.* at 3. DI responded on August 19, 2024, indicating that it "will make rolling productions of internal documents" related to the Tech Challenge, without explaining which objections it was withdrawing and which it continued to assert. *See* Exh. M. DI also apparently maintains its refusal to provide documents responsive to Requests 1, 4, and 5 unless they relate to the Tech Challenge. *Id.*

### III.   ARGUMENT

Plaintiffs seek limited, relevant information from DI and have sought to minimize the

5

burden on DI, which, though a third party, remains heavily intwined with Defendants' unlawful conduct. DI's general, all-encompassing objections are both inappropriate as a matter of law and not founded on fact. DI's objections should be overruled and it should be compelled to produce non-privileged responsive documents by September 20, 2024 to permit Plaintiffs to comply with the Court's scheduling order for the preliminary injunction proceedings.

### A. Plaintiffs Request Relevant and Limited Information from DI and Diligently Sought to Reduce the Burden on DI

To establish that Plaintiffs' harm is traceable to Defendants' *ultra vires* and unconstitutional conduct, Plaintiffs need discovery from DI and other third parties to prove that Defendants' funding was used domestically, that Defendants' promotion of GDI and similar companies damaged Plaintiffs' reputation or sovereign interest, and/or that Defendants caused tech companies to adopt products that harmed Plaintiffs.

The subpoena served on DI requests information related to four relevant topics and manifests Plaintiffs' efforts to limit the burden on DI as a third party. Specifically, Plaintiffs seek: (1) documents that relate to **both** Defendants **and** technology platforms (with suggested search terms); (2) information related to the Tech Challenge and resulting grant; (Req. 2-3); (3) information related to other awards DI received from Defendants (with suggested search terms); and (4) information related to services or products DI offers that refer or relate to Plaintiffs and some of their associated personnel and coverage (with suggested search terms). These requests all seek information necessary to establish liability and traceability.

Cognizant of DI's status as a third party, Plaintiffs worked to limit the information sought, particularly after receiving DI's objections to the first subpoena. Plaintiffs halved the number of requests in its second subpoena, from ten to five, reducing the topics covered. *Compare* 5/17/24 Subpoena, Exh. D *with* 7/17/24 Subpoena, Exh. A. The revisions also circumscribed the scope of the requests by removing any obligation to provide documents Defendants sent or received and, consistent with the June conferral, providing a list of suggested terms to facilitate DI's search

6

efforts—and suggesting that such terms be restricted by the simultaneous appearance of other terms. Plaintiffs also agreed to accept DI's time limitations. Additionally, Plaintiffs obtained a revised attorneys-eyes-only protective order to minimize DI's burdens in protecting proprietary or third-party information. *See* Exh. P.

Some burdens, however, cannot be avoided, because DI has unique, relevant evidence.

**B.     DI Inappropriately Asserted General Objections Without Explanation.**

DI's general objections are inappropriate and should be considered waived or be overruled. *See Heller v. City of Dallas*, 303 F.R.D. 466, 483 (N.D. Tex. 2014) ("General objections ... are meaningless and constitute a waste of time for opposing counsel and the court."); *Tijerina-Salazar v. Vengas*, 2021 WL 6011137, No. 19-CV-74, *7 (W.D. Tex. Dec. 20, 2021) ("[g]eneral or boilerplate objections are invalid") (citation omitted).

District courts in the Fifth Circuit hold that the specificity requirement of Rule 34 applies equally to Rule 45 subpoenas, and "a non-party's Rule 45(d)(2)(B) objections to discovery requests in a subpoena are subject to the same prohibition on general or boiler-plate objections and requirements that the objections must be made with specificity and that the responding party must explain and support its objections." *Am. Fed. of Musicians v. Skodam Films*, 313 F.R.D. 39 (N.D. Tex. 2015) (citing *Heller*, 303 F.R.D. at 483).[2] "In short, objections to discovery must be made with specificity, and the responding party has the obligation to explain and support its objections." *Heller*, 303 F.R.D. at 483 (internal quotations omitted).

Here, however, DI raises general objections, including asserting that each of Plaintiffs' requests are vague, ambiguous, overbroad, disproportional to the case's needs, often without any explanation as to why this is allegedly so. *See* 7/31/24 Obj., Exh. B. DI's General Objections

---

[2] As the court noted in *American Federation of Musicians*, few cases discuss the particularity requirement in the context of Rule 45 subpoenas, prompting the court to draw upon case law addressing Rule 34 subpoenas and to conclude there is no logical reason to distinguish between the two for purposes of the particularity analysis. *See id.* at 46.

7

consists of twelve pages of boilerplate objections it incorporates into every "response" to a request. *See, e.g.*, 7/31/24 Obj., Exh. B at 14-20 (incorporating "General Objections and Reservation of Rights"). These types of objections fail to satisfy DI's obligations or comply with the Rules. *Heller*, 303 F.R.D. at 483 (disapproving "where multiple 'general objections' are incorporated into many of the responses with no attempt to show the application of each objection to the particular request") (citing *Weems v. Hodnett*, 2011 WL 3100554 at *1 (W.D. La. July 25, 2011)); *see Rivera v. U.S.*, 2015 WL 13649403, No 15-CV-21-KC, *7 (W.D. Tex. Dec. 22, 2015) (overruling objections that failed to explain what part of requests respondent was and was not responding to, and thereby "failed to follow the procedures in the Federal Rules ... made explicit by the decision in *Heller*").

Further, DI raises the sort of objections courts explicitly condemn, for instance objecting "to the extent that" the requests seek documents outside of DI's custody, or control. 7/31/24 Obj., Exh. B at 2 ¶ 1. Indeed, most of DI's General Objections are asserted "to the [unexplained] extent ..." *Id.* ¶¶ 1-11, 14-29, 31-34. Such "to the extent that" objections have been condemned for more than a decade, characterizing them as "worthless for anything beyond delay of the discovery." *Heller*, 303 F.R.D. at 483 (quoting *Sonnino v. Univ. of Kan. Hosp. Auth.*, 221 F.R.D. 661, 555–67 (D. Kan. 2004)). DI's objections also fail to provide "sufficient specificity to allow the Court (1) to conclude that the responses were made after a case-specific evaluation and (2) to evaluate the merit of that response." *See Heller*, 303 F.R.D. at 485–86. Moreover, DI ignores its duty as the responding party to obtain clarification from Plaintiffs concerning the meaning of terms before asserting its "vague and ambiguous" objections; DI failed to "exercise reason and common sense to attribute ordinary definitions to terms and phrases," *id.* (quoting *McCoo v. Denny's Inc.*, 192 F.R.D. 675, 694 (D. Kan. 2000)); and DI failed "to explain its understanding of the allegedly vague and ambiguous terms ... and explicitly state that its answer is based on that understanding. *See Heller*, 303 F.R.D. at 488; *Tijerina-Salezar*, 2021 WL 6011137 at *7 (responding party "should exercise reason and common sense to attribute ordinary definitions" and "attempt to seek clarification prior to objecting") (citations omitted); *see also Stanton 4433 Owners Assn. v. State Farm Lloyds*, 2022 WL 17752218, No. 20-CV-280-FM, *3-5 (W.D. Tex. Sept. 6, 2022) (noting

8

general objections were ineffective, that responding party must disclose information "clearly contemplated by request or well within its proper scope," that interpretation of request inconsistent with its text was disingenuous, and that blanket unsupported assertion of hypothetical privileges was "improper to a fault").

DI's "specific" objections fare no better, with DI first incorporating its General Objections, and then repeating its "vague, ambiguous, overbroad, and not proportional to the needs of the case" objection. Exh. B at 14-16, 18, 20. Such boilerplate or unsupported objections, even when raised in response to a specific discovery request, are improper and ineffective. *See Heller*, 303 F.R.D. at 483. Further, DI's "specific" objections fail to offer definitions for allegedly vague terms and fail to explain the purported burden and claimed lack proportionality. DI's objections are "worthless" and "meaningless," and "'Rambo tactics' that have brought disrepute upon attorneys and the legal system." *McLeod, Alexander, Powel & Apffel v. Quarles*, 894 F.2d 1482, 1486 (5th Cir. 1990); *Heller*, 303 F.R.D. at 483.

DI's general objections are ineffective and should be considered waived or be overruled.

### C. DI Asserted Objections Without a Basis in Fact

DI's burden and proportionality objections, and potentially other objections, were asserted without a factual basis. During Plaintiffs' August 7, 2024 conferral with DI, DI was unable to provide any specifics concerning the nature or degree of the ostensible burden that it insisted the subpoena created: It did not know the number of custodians in question or sources of electronic documents and systems at its disposal. DI could not state whether its email is Outlook-based or housed in some other system, or whether, or which part of, its server space is virtual or physical; it did not know the company's retention policy. For even the most finite requests concerning the Tech Challenge grant, DI could not confirm or deny that it had separate identifiable files related to that grant. *See* 8/13/24 Letter, Exh. C. In short, other than asserting that the requests were

overbroad,[3] DI could articulate no factual basis for its claim of burden—even though this conversation occurred nearly two months after DI was served with the May subpoena which included similar requests.

DI's boilerplate objections and its inability to explain the factual basis for its proportionality and burden objections indicate its objections are not founded in fact. DI's lack of knowledge as to the source and volume of its documents and manner of collection confirms this conclusion. Where an "undue burden objection" to a Rule 45 subpoena is made, but in a conclusory fashion and "unsupported by the specific facts as to the nature and extent of any burden," the objection is properly rejected. *See Nasufi v. King Cable, Inc.*, 2017 WL 3334110, No. 3:15-cv-3273, *7 (N.D. Tex. Aug. 4, 2017); *Heller*, 303 F.R.D. at 490 ("'[i]t would be difficult to dispute the notion that the very act of making such boilerplate objections is *prima facie* evidence of a Rule 26(g) violation because if the lawyer had paused, made a reasonable inquiry, and discovered facts that demonstrated the burdensomeness ... of the discovery request, he or she should have disclosed them in the objection ...'") (quoting *Mancia v. Mayflower Textile Servs. Co.*, 253 F.R.D. 354, 359 (D. Md. 2008)).

In short, while DI may object to requests, *see* Rule 45(d)(2)(B), it may not subvert the discovery process. *See Andra Group, LP v. JDA Software Group, Inc.*, 312 F.R.D. 444, 450-51 (N.D. Tex. 2015). *See also id.* ("Third party status does not confer a right to obfuscation or obstinacy."). And where, as here, the information sought by Plaintiffs is relevant and necessary, the document requests are limited, Plaintiffs have described the requested documents with particularity, including by providing suggested search terms, and DI provides no basis to support its claim of burden, compelling compliance with the subpoena is appropriate. *See Wiwa v. Royal Dutch Petro.*

---

[3] As explained above, Plaintiffs narrowed the subpoena and agreed to further narrowing in an attempt to address DI's overbreadth objections. Due to the expedited nature of the preliminary injunction proceeding, Plaintiffs cannot wait to complete party merits discovery before serving the subpoena as DI seems to imply would be appropriate. Further, the simultaneous discovery was approved by the Court where this matter is pending.

*Co.*, 392 F.3d 812, 818 (5th Cir. 2004) (identifying factors for courts to consider in determining whether a subpoena creates an undue burden).[4]

Accordingly, Plaintiffs respectfully request the Court to compel DI to produce non-privileged documents responsive to Plaintiffs' July 17, 2024 subpoena, with all such documents being produced no later than September 20, 2024. *See* Proposed Order, Exh. Q. Alternatively, Plaintiffs request this Court transfer the consideration of this motion to the Issuing Court, the United States District Court for the Eastern District of Texas, Tyler Division, pursuant to Fed. R. Civ. P. 45(f).

---

[4] Due to page limitations for this Motion, in the interest of judicial efficiency, and because Plaintiffs do not know which objections DI actually relies upon, Plaintiffs do not further address each objection set forth in DI's 22-page Objections and Response but will respond in its reply brief to any objections DI chooses to maintain.

Date: August 21, 2024

**KEN PAXTON**
Attorney General

**BRENT WEBSTER**
First Assistant Attorney General

**RALPH MOLINA**
Deputy First Assistant Attorney General

**AUSTIN KINGHORN**
Deputy Attorney General for Legal Strategy

**CHARLES K. ELDRED**
Chief, Legal Strategy

**RYAN D. WALTERS**
Chief, Special Litigation Division

/s/ David Bryant

**DAVID BRYANT**
Senior Special Counsel
Texas Bar No. 03281500

**SUSANNA DOKUPIL**
Attorney in Charge
Special Counsel
Texas Bar No. 24034419

**MUNERA AL-FUHAID**
Special Counsel
Texas Bar No. 24094501

**OFFICE OF THE ATTORNEY GENERAL OF TEXAS**
Special Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
Tel.: (512) 463-2100
Susanna.dokupil@oag.texas.gov
David.bryant@oag.texas.gov
Munera.al-fuahid@oag.texas.gov

*COUNSEL FOR THE STATE OF TEXAS*

Respectfully submitted,

/s/ Jenin Younes

**JENIN YOUNES**
LEAD ATTORNEY
NY Bar No. 5020847
NEW CIVIL LIBERTIES ALLIANCE
jenin.younes@ncla.legal
* *Pro hac vice* forthcoming

**MARGOT J. CLEVELAND**
Of Counsel
Michigan Bar No. 83564
NEW CIVIL LIBERTIES ALLIANCE
margot.cleveland@ncla.legal

**ZHONETTE M. BROWN**
D.C. Bar No. 463407
NEW CIVIL LIBERTIES ALLIANCE
zhonette.brown@ncla.legal

*COUNSEL FOR PLAINTIFFS*
*THE DAILY WIRE ENTERTAINMENT LLC*
*AND FDRLST MEDIA LLC*

## CERTIFICATE OF CONFERENCE

I hereby certify that counsel for Plaintiffs attempted to resolve the discovery disputes presented in this motion by conferring with counsel for Disinformation Index, Inc. via email, letter, and telephonically, as detailed above and reflected in the attached exhibits. Plaintiffs and counsel for Disinformation Index further conferred by email on August 20, 2024. Although an agreement was reached as to some issues, the items presented in this motion could not be resolved and require court intervention.

## CERTIFICATE OF SERVICE

I certify that a true and accurate copy of the foregoing document and accompanying exhibits has been served on Subpoena Recipient Disinformation Index, Inc. via email to counsel for Disinformation Index, Inc., and has been sent for personal service to Disinformation Index, Inc.'s registered agent. Additionally, all counsel from the original proceeding have been served via email.