UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| IN RE SUBPOENA TO NON-PARTY DISINFORMATION INDEX, INC.<br><br>THE DAILY WIRE, LLC, ET AL.,<br><br>　　　　　　Plaintiffs,<br><br>　　- vs -<br><br>DEPARTMENT OF STATE, ET AL.,<br><br>　　　　　　Defendants. | Case No. 1:24-mc-00963<br><br>Underlying Action Pending in the United States Eastern District Court of Texas, Case No. 6:23-cv-00609-JDK<br><br>**OPPOSITION BY NON-PARTY DISINFORMATION INDEX, INC. TO PLAINTIFFS' MOTION TO COMPEL** |

I.      INTRODUCTION

Disinformation Index, Inc. ("DI") is a small not-for-profit company that is not a party to the ongoing *Daily Wire* litigation. The Plaintiffs' allegations in that litigation center around how the State Department and the Global Engagement Center ("GEC") have funded private organizations, including DI, allegedly to target media company Plaintiffs as domestic entities purveying disinformation.

A little over a month ago, Plaintiffs served an incredibly broad subpoena on non-party DI that seeks information completely untethered to any funding by the State Department. Despite the facially burdensome and irrelevant requests, non-party DI has engaged with Plaintiffs in a good faith effort to comply with their subpoena, including agreeing to promptly produce relevant and responsive materials, subject to DI's objections. But instead of waiting to review those materials (which have now been produced), Plaintiffs filed this motion to compel. Non-party DI has nonetheless moved forward as promised, and has produced more than 1,200 pages of material, including more than 250 documents responsive to Plaintiffs' subpoena.

As to subpoenaed materials relevant to the *Daily Wire* litigation, Plaintiffs' motion to compel was premature and is now moot. And as to the remainder of the subpoena to which DI objected, the subpoena is improper and unduly burdensome on a third party, because it wrongly rests on arguments that (i) materials going well beyond federally funded projects are somehow relevant to the litigation against government entities, (ii) Plaintiffs' requests seeking all documents relating to both Defendants and broadly defined "Technology Platforms," as well as documents regarding a third-party's work relating to Plaintiffs and a laundry list of individuals, whose relevance to the *Daily Wire* litigation is questionable, in a five-year period are somehow not overbroad and unduly burdensome, (iii) DI's specific objections are somehow deficient in legal and factual bases, and (iv) DI's good faith efforts to comply with Plaintiffs' discovery requests, including non-party DI's production of over 1,200 pages of over 250 responsive documents, are somehow signs of an intent to delay.

1

Non-party DI has now produced all relevant materials: documents relating to federally funded projects, including the U.S.-Paris Tech Challenge grant and the funding from the National Endowment for Democracy ("NED") that are the subject of the *Daily Wire* litigation. There is nothing more to compel. Accordingly, non-party DI urges this court to deny the Plaintiffs' motion to compel and dismiss this action.

## II.   BACKGROUND

### 1.   Disinformation Index Inc. Has Limited Connection to the State Department.

DI is a small not-for-profit company based in the United States. Ex. A at ¶¶ 2, 7. The main goal of DI's work is to provide independent, neutral disinformation risk data to digital advertisers around the world, enabling them to make more informed brand safety decisions. *Id.* at ¶ 2. The only State Department funding for any DI-related entity has come in the form of two specific grants. First, in 2021, Disinformation Index Ltd. ("DI Ltd."), a U.K. entity related to DI, received a $100,000 grant from the U.S.-Paris Tech Challenge. *Id.* at ¶ 3. The challenge was a collaboration between the U.S. State Department's GEC, foreign governments, and international organizations to fund organizations that advance technologies to combat disinformation globally. *Id.* at ¶ 4. The objective of this $100,000 grant was to help fund the expansion of DI Ltd.'s disinformation risk measurement to advertisers in East Asia and Europe. *Id.* The objective of this funding did not include expansion of disinformation risk measurement in the United States.

Second, DI Ltd. received a grant from the NED to perform media market analyses in Asia, Africa, and South America, as well as to expand DI Ltd.'s translation capabilities to four non-roman alphabet languages. *Id.* at ¶ 12. These two grants are the only funding any DI-related entity has received related to U.S. federally funded agencies.

### 2.   Non-Party DI Has Consistently Shown Good Faith Efforts to Comply with Plaintiffs' Overbroad and Unduly Burdensome Discovery Requests.

DI is a non-party to this case. Nevertheless, Plaintiffs have now twice attempted to serve improper subpoenas on DI seeking broad-ranging information about its businesses (unrelated to the allegations in the *Daily Wire* action).

Plaintiffs' first attempt involved an unauthorized and invalid subpoena served on May 17, 2024. On May 7, 2024, the Court in the *Daily Wire* action ordered Expedited Discovery and required Plaintiffs to serve subpoenas by May 12, 2024. Dkt. 1-1 at 20-26. Plaintiffs elected not to comply with that order and instead served DI with a subpoena on May 17, 2024 ("May 17 Subpoena"). Dkt. 1-4.[1] In the spirit of cooperation, DI nonetheless provided Plaintiffs with its Objections and Responses to the overbroad and invalid May 17 Subpoena, and conferred with Plaintiffs on June 26, 2024. Dkt. 1-5; Ex. B.

Plaintiffs then waited another month before serving a replacement subpoena on non-party DI and, when they did, the subpoena again included overbroad and unduly burdensome requests. Dkt. 1-1 at 2-18 ("July 17 Subpoena"). Despite reducing the number of requests from ten to five, the July 17 Subpoena still seeks all manner of DI's business records unrelated to the two federal grants and contains a series of vague and overbroad definitions[2] and instructions,[3] as well as a laundry list of search terms purportedly to be applied across all "electronically stored information" within the company.[4] *See* Dkt. 1-2 at 11-12, 16, 20, 22. DI served Objections and Responses to the July 17 Subpoena (two weeks before the subpoena return date) on July 31, 2024. *Id.*

DI again conferred with Plaintiffs on August 7, 2024 ("August 7 MAC"). *See* Dkt. 1-3; Ex. C.

---

[1] The subpoena was singed on May 16, 2024 but was served on non-party DI on May 17, 2024.
[2] For instance, "Technology Platforms" is defined as "any organization that provides a service for public users to disseminate or receive speech, expression, information, or other content (typically, but not necessarily, content that includes messages, videos, photographs, and/or sound files)" and includes "both the organizations and any of their officers, agents, employees, contractors, or any other Person employed by or acting on behalf of the Technology Platforms, as well subcontractors or entities used to conduct fact-checking or any other activities relating to Content Moderation." Dkt. 1-1 at 11.
[3] For instance, the applicable time period covered by the requests is January 1, 2019 to present, despite the fact that DI Ltd.'s receipt and use of the U.S.-Paris Tech Challenge award and subaward took place between 2020 and 2022. Dkt. 1-1 at 12; Dkt. 1-2 ¶ 30.
[4] The term "electronically stored information" is not defined or limited in any way in the July 17 Subpoena.

Plaintiffs agreed to limit the responsive timeframe and stated (for the first time) that the search terms included in various requests were "suggested." Ex. C at 2. DI stated that it would produce documents (subject to its objections) over the following few weeks. *Id.*

Then, almost a week after the August 7 MAC, on August 13, 2024, Plaintiffs sent DI a follow-up letter wrongly accusing DI of conducting the conferrals in bad faith and of making objections that misconstrued the July 17 Subpoena. Dkt. 1-3; Ex. C. Having wasted a whole month after the June 26 MAC to file its July 17 Subpoena, Plaintiffs demanded immediate response and document production from non-party DI—***within three days***—and threatened to file a motion to compel if non-party DI did not complete its production by September 13, 2024. *Id.* Then, without waiting for DI's production or its own self-set September 13 deadline, Plaintiffs filed this motion to compel.

In the meantime, as it promised, DI moved forward with the review and production of documents, and, on August 27, 2024, DI produced over 1,200 pages of more than 250 documents relating to all federal funding that DI Ltd. received between 2020 and 2022. Ex. E.

### III. ARGUMENTS

Under Rule 45, courts give non-parties "special consideration" to ensure that the subpoena does not subject them to undue burden or expense. *Scrum All. Inc. v. Scrum, Inc.*, 2020 WL 6559625, at *1 (E.D. Tex. Nov. 9, 2020). A party may move to compel discovery only after "attempt[ing] in good faith to obtain discovery without court action." *Chinitz v. Realogy Holdings Corp.*, 2020 U.S. Dist. LEXIS 197102, at *5 (W.D. Tex. Oct. 22, 2020). In determining whether to deny a motion to compel, "[t]he Court must balance the need for discovery by the requesting party and the relevance of the discovery to the case against the harm, prejudice, or burden to the other party." *Id.* (citing *Cmedia, LLC v. LifeKey Healthcare, LLC*, 216 F.R.D. 387, 389 (N.D. Tex. 2003)).

    1. **Non-Party DI Has Already Agreed to Produce All Relevant Documents.**

A discovery request is not relevant unless there is some possibility that the information sought may be relevant to the claims or defenses of any party. *See S.E.C. v. Brady*, 238 F.R.D. 429, 437 (N.D. Tex. Oct. 16, 2006) (discovery requests "of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure" are irrelevant). Here, Plaintiffs' allegations center on the theory that Government Defendants improperly funded non-party DI, a private actor, to censor Plaintiffs' speech on Defendants' behalf. *See, e.g.*, Ex. D ¶¶ 3, 4, 59. Thus, non-party DI's involvement in this case is limited to any federal grants that DI may have received from the Defendants. In the spirit of good faith and collaboration, non-party DI has already agreed to produce the universe of all relevant documents, i.e., documents relating to all federally funded projects, including the U.S.-Paris Tech Challenge grant and the NED funding. Plaintiffs' discovery requests impermissibly go beyond what is relevant, seeking materials relating to Defendants, broadly defined "Technology Platforms," and DI's work, to the extent such documents exist, relating to Plaintiffs and a host of other individuals whose relevance to the *Daily Wire* litigation is not explained or supported by Plaintiffs in any way. *See, e.g.*, Dkt. 1-1 at 16-17 (Request No. 5).[5]

**2. Plaintiffs' July 17 Subpoena is Unduly Burdensome to Non-Party DI.**

In determining whether a subpoena subjects a non-party to undue burden, a court considers: (1) the relevance of the requested information; (2) the party's need for the information; (3) the breadth of the request; (4) the time period covered by the request; (5) the particularity with which the request is described; and (6) the burden imposed, including the expense and inconvenience to the non-party. *Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 818 (5th Cir. 2004). The question of undue burden on a non-party "calls upon the court to consider whether the information is necessary and

---

[5] Request No. 5 seeks "all Communications, Documents, and Information from 2019 to the present that refer to, or relate to, any product, service, tool, or technology, You create or offer [ ] that refers to or relates to, in whole or in part, Bentkey, The Daily Wire, FDRLST Media, The Federalist, [and a host of individuals whose relevance to the *Daily Wire* litigation is not explained or specified in any way]" and instructing DI to run more than a page long of search terms across all "electronically stored information."

unavailable from any other source." *Rembrandt Pat. Innovations v. Apple, Inc.*, 2015 WL 4393581, at *1 (W.D. Tex. July 15, 2015); *see also League of United Latin Am. Citizens v. Abbott*, 2022 WL 3593055, at *6 (W.D. Tex. Aug. 22, 2022) ("The availability of alternative sources counsels against allowing the discovery Plaintiffs request."). The burden to ensure that the subpoena does not pose undue burden, expense, and inconvenience to the non-party lies with the party seeking discovery. *LiiON, LLC v. Vertiv Grp. Corp.*, 2019 WL 13136760, at *1 (W.D. Tex. July 30, 2019).; *Exp. Worldwide, Ltd. v. Knight*, 241 F.R.D. 259, 263 (W.D. Tex. 2006).

Here, Plaintiffs' July 17 Subpoena seeks ***all*** documents relating to both Defendants and broadly defined "Technology Platforms" over a five-year period (Request No. 1); all documents relating to DI's products and services relating to Plaintiffs and a laundry list of individuals whose relevance to the *Daily Wire* litigation is questionable, over a five-year period (Request No. 5); all documents relating to all broadly defined federal "Award[s]" in a five-year period (Request No. 4); and all documents that may arise from running dozens of search terms across all "electronically stored information," which is left undefined (Request Nos. 1, 4, and 5). *See Bingham v. Baycare Health Sys.*, 2016 U.S. Dist. LEXIS 112676, at *15 (M.D. Fla., Aug. 24, 2016) (denying motion to compel where request is not "narrowly tailored to the relevant time alleged in the Amended Complaint"); *Trs. of Boston Univ. v. Everlight Elecs. Co.*, 2014 U.S. Dist. LEXIS 203778, at *15 (D. Mass. Sept. 10, 2014) (subpoenas seeking "broad categories of documents" and "couched in such broad language as to make arduous the task of deciding which of numerous documents may conceivably fall within [their] scope" are unduly burdensome). For a non-party, a small not-for-profit organization, the subpoena is particularly burdensome. In addition to a host of vaguely and broadly defined terms, the July 17 Subpoena also instructs a non-party not-for-profit organization to run dozens of search terms across all "electronically stored information" in search of documents entirely untethered to this case. *See* Dkt. 1-2 at 11-12, 16, 20, 22.

### 3. Plaintiffs' July 17 Subpoena is Facially Overbroad.

A subpoena is overbroad when it seeks materials "beyond what the requesting party reasonably requires." *Va. Dep't of Corr. v. Jordan*, 921 F.3d 180, 190 (4th Cir. 2019). As "strangers to the litigation [with] no dog in [the] fight," non-parties "should not have to do the work of tailoring a subpoena to what the requesting party needs; the requesting party should have done that before serving it." *Id.* A subpoena for documents from a non-party is facially overbroad where the requests seek all documents concerning the parties without limitation as to the date or relevance to the action. *United States ex rel. Eichner v. Ocwen Loan Servicing LLC*, 2024 WL 2922979, at *7 (E.D. Tex. June 10, 2024). The party seeking discovery bears the onus of limiting its subpoena to "the suit's relevant subject matter and to a specific time period." *Id.* at *8.

Here, Plaintiffs' July 17 Subpoena is facially overbroad because it seeks documents that are equally accessible to Plaintiffs from the Defendants or the broadly defined "Technology Platforms." *See Abbott,* 2022 WL 3593055 at *6 ("The availability of alternative sources counsels against allowing the discovery Plaintiffs request."). Moreover, the July 17 Subpoena contains extremely vague and broad definitions, instructions, and terms. *See Parker v. Bill Melton Trucking, Inc.*, 2017 WL 6520779, at *4 (N.D. Tex. Feb. 2, 2017) (rejecting discovery requests "sweep[ing] into its ambit anything even tangentially related to [opposing party]"). Plaintiffs identified two sources of federal grants that DI Ltd. received between 2020 and 2022: the U.S.-Paris Tech Challenge grant and the NED grant. Ex. D ¶¶ 127, 135. Rather than seeking only documents relating to all federal funding that DI received during the applicable period (2020-2022), however, the July 17 Subpoena inexplicably broadens the responsive period to 2019-present. *See* Dkt. 1-1 at 12, Dkt. 1-2 at ¶ 30. Additionally, the July 17 Subpoena instructs non-party DI to run dozens of search terms across all of its "electronic stored information" to seek (i) documents regarding DI's products and services relating to Plaintiffs and a host of individuals whose relevance to the *Daily Wire* action is questionable

7

(Request No. 5), (ii) information relating to any "Award" received from the U.S. State Department from 2019 to present (Request No. 4), and (iii) information that would be equally accessible to Plaintiffs from the Defendants or the broadly-defined "Technology Platforms" directly (Request No. 1).[6]  Dkt. 1-1 at 14-17.  It was not until the August 7 MAC that Plaintiffs agreed to limit the responsive period to 2020-2022 and to recast its search terms as "suggested."  Ex. C.  Plaintiffs' attempt to seek information either irrelevant to or beyond the scope of what should be sought from a non-party is a naked attempt to "cast a wide, indefinite net into the universe of discovery [ ], limited only by whether [non-party DI] possesses such information."  *Ocwen*, 2024 WL 2922979, at *8.

### 4. Non-Party DI Has Sufficiently Explained Both Legal and Factual Bases of Its Objections and Responses to Plaintiffs' July 17 Subpoena.

A non-party's objections to a subpoena must "be made with specificity and [ ] the responding party must explain and support its objections."  *Liion*, 2019 WL 13136760, at *1 (citing *MetroPCS v. Thomas*, 327 F.R.D. 600, 607 (N.D. Tex. 2018)).  General objections to discovery requests as irrelevant, overly broad, or unduly burdensome, without more, are prohibited.  *See ORIX USA Corp. v. Armentrout*, 2016 WL 4095603, at *2 (N.D. Tex. Aug. 1, 2016).  On the other hand, proper objections are those that specify how each discovery request is irrelevant, overbroad, or unduly burdensome.  *See Knight Specialty Ins. Co. v. JBR Express, Inc.*, 2022 WL 17752214, at *3 (W.D. Tex. Nov. 9, 2022); *Exp. Worldwide*, 241 F.R.D. at 263.  Upon receiving proper objections to the discovery requests, the party seeking to compel discovery must "address each objection raised by [the objecting party] and show why each discovery request is relevant to his claims."  *Dortch v. Wells Fargo Bank, N.A.*, 2020 WL 1289431, at *4 (E.D. Tex. Mar. 18, 2020).

Here, non-party DI has explained with sufficient particularity the legal and factual bases for its objections to the discovery requests in the July 17 Subpoena.  DI specified in its Objections and

---

[6]

Responses that various terms and instructions of the July 17 Subpoena are vague and broadly defined. *See, e.g.*, Dkt. 1-2 ¶ 28 (objecting to definition of "Testbed" as vague, ambiguous, and overbroad, "at least to the extent [it] incorporates an entire page of a State Department website"); ¶ 19 (objecting to definition of "Content" as vague, ambiguous, and overbroad, at least to the extent it seeks "material…posted or sent to another user or users by any user on Technology Platforms"). Additionally, DI objected to the responsive time period (2019-present) and proposed a narrower time period (2020-2022), Dkt. 1-2 ¶ 30, and objected to the dozens of search terms to be applied across "electronically stored information" as overbroad and unduly burdensome, Dkt. 1-2 at 15, 20, 23. As a small not-for-profit organization, DI does not have systems in place to automatically search for and pull electronically stored information. Ex. C. Identifying documents responsive to the July 17 Subpoena's wide-sweeping requests would be unduly burdensome for DI, a non-party to this case.

### 5. Non-Party DI Has Consistently Shown Good Faith and Commitment to Complying with Plaintiffs' Discovery Requests.

Although a non-party to this case, DI has consistently shown good faith and commitment to complying with Plaintiffs' discovery requests. Although Plaintiffs' May 17 Subpoena was late-served and invalid, non-party DI served its Objections and Responses on June 17, 2024. Non-party DI also conferred with Plaintiffs twice to facilitate discussions of how it could comply with Plaintiffs' discovery requests, even as the requests are invalid, overbroad, and unduly burdensome. As the party seeking discovery, Plaintiffs should have come to the August 7 MAC with suggestions on how to narrow the overbroad July 17 Subpoena. *LiiON,* 2019 WL 13136760 at *1 (burden to ensure that subpoena does not pose undue burden to non-party lies with party seeking discovery); *Exp. Worldwide,* 241 F.R.D. at 263. Plaintiffs' expectation that non-party DI would dedicate its limited resources to tailoring wide-sweeping discovery requests, before Plaintiffs even began to address DI's objections, is unreasonable and misplaced. *Va. Dep't of Corr.*, 921 F.3d at 190 ("A nonparty should

9

not have to do the work of tailoring a subpoena to what the requesting party needs."). Non-party DI has invariably been timely in all its objections and responses to Plaintiffs' discovery requests and in its meet and confer correspondences with Plaintiffs. Moreover, non-party DI has produced more than 1,200 pages of over 250 documents relating to all federal funding that DI Ltd. received during 2020-2022. *See* Ex. E. Plaintiffs' characterization of DI's good faith efforts to comply with their discovery requests as attempts to delay discovery is baseless, offensive, and wrong.

### 6. Plaintiffs' Motion to Compel is Premature and Inappropriate.

Plaintiffs' Motion to Compel is premature given that DI had already agreed to produce relevant documents, and has now produced more than 250 documents relating to all federally funded projects, including the U.S.-Paris Tech Challenge grant and the NED funding. *See YETI Coolers, LLC v. RTIC Coolers, LLC*, 2016 U.S. Dist. LEXIS 159086, at *12 (W.D. Tex. Nov. 16, 2016) (denying portion of motion to compel where subpoena recipient had already produced "spreadsheets containing the requested information"); *Chinitz*, 2020 U.S. Dist. LEXIS 197102, at *5 (motion to compel should be denied where burden to subpoena recipient outweighs requesting party's need for discovery and relevance of materials sought). Plaintiffs' Motion to Compel is also inappropriate given that non-party DI has already produced all documents relevant to this case. Plaintiffs' theory of the case is that the U.S. State Department improperly funded DI, a private third-party, to censor Plaintiffs' speech on its behalf. Thus, the only relevant documents here are those relating to the federal funding that DI, or more precisely its U.K. entity, DI Ltd., received during 2020-2022. DI produced all such documents to Plaintiffs on August 27, 2024, despite the July 17 Subpoena's overbreadth and undue burden on non-party DI. *See* Ex. E.

### IV. CONCLUSION

For the foregoing reasons, non-party DI respectfully requests that the Court deny Plaintiffs' premature and inappropriate Motion to Compel.

Dated: August 28, 2024

    Respectfully submitted,

WILMER CUTLER PICKERING HALE AND DORR LLP

/s/ Hannah Santasawatkul
Hannah Santasawatkul
Texas Bar No. 24107617
1225 17th Street
Suite 2600
Denver, Colorado 80202
(t) (720) 598-3468
(f) (720) 274-3133
Hannah.Santasawatkul@wilmerhale.com

Louis W. Tompros (Of Counsel)
60 State Street
Boston, MA 02109
(t) (617) 526-6886
(f) (617) 526-5000
Louis.Tompros@wilmerhale.com

Counsel for Non-party Disinformation Index, Inc.

## CERTIFICATE OF SERVICE

I certify that I caused the foregoing document to be electronically filed on August 28, 2024, with the Clerk using the CM/ECF System. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the court's CM/ECF system.

/s/ Hannah Santasawatkul

Hannah Santasawatkul