# UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | |
|---|---|
| THE DAILY WIRE, LLC and STATE OF TEXAS, <br>   *Plaintiffs* <br><br> v. <br><br> UNITED STATES DEPARTMENT OF STATE and GLOBAL ENGAGEMENT CENTER, <br><br>   *Defendants* <br><br> THE DAILY WIRE, LLC, <br>   *Movant* <br><br> v. <br><br> DISINFORMATION INDEX, INC. <br>   *Respondent* | Case No. 1:23-mc-0963-DII <br><br> (Underlying Case No. 6:23-cv-609-JDK, Eastern District of Texas) |

## ORDER

 Before the Court are Plaintiffs' Motion to Compel Discovery from Subpoena Recipient Disinformation Index, Inc., filed August 21, 2024 (Dkt. 1); Opposition by Non-Party Disinformation Index, Inc. to Plaintiffs' Motion to Compel, filed August 28, 2024 (Dkt. 5); Plaintiffs' Reply, filed September 4, 2024 (Dkt. 9); and Plaintiffs' Notice of Amended Scheduling Order, filed October 16, 2024 (Dkt. 10). By Text Order entered September 13, 2024, the District Court referred the motion to this Magistrate Judge for disposition, pursuant to 28 U.S.C. § 636(b)(1)(A), Federal Rule of Civil Procedure 72, and Rule 1(c) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas.

### I.   Background

 Plaintiffs The Daily Wire, LLC, FDRLST Media, LLC, and the State of Texas filed the underlying litigation in December 2023 "to halt one of the most egregious government operations

1

to censor the American press in the history of the nation." *Daily Wire, LLC v. Dep't of State*, No. 6:23-cv-609-JDK (E.D. Tex. Dec. 6, 2023), Dkt. 1-8 at 2. Plaintiffs contend that Defendants – the U.S. Department of State, its Global Engagement Center ("GEC"), and six State Department officials – are funding and promoting companies such as respondent non-party Disinformation Index Inc. ("DI") that "create technology that damages the reputation of disfavored American media outlets by labeling them 'risky,' unreliable, or purveyors of 'disinformation.'" Dkt. 1 at 1.

The U.S. District Court for the Eastern District of Texas permitted Plaintiffs to serve up to five third-party subpoenas as part of limited, expedited discovery related to their motion for preliminary injunction. Dkt. 1-10 at 7. Plaintiffs served a Subpoena on DI on July 27, 2024, and now ask this Court to compel discovery.[1] DI, "a small not-for-profit company," responds that the motion was filed prematurely and is now moot because it has produced all responsive materials relevant to the underlying litigation, comprising over 250 documents totaling more than 1,200 pages. Dkt. 5 at 2.

For the reasons explained below, the Court **DENIES** the motion to compel.

## II. Legal Standards

Rule 26(b)(1) provides:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Generally, the scope of discovery is broad. *Crosby v. La. Health Serv. & Indem. Co.*, 647 F.3d 258, 262 (5th Cir. 2011). "A discovery request is relevant when the request seeks admissible

---

[1] Plaintiffs served the subpoena at issue after DI objected to an earlier subpoena as untimely.

evidence or 'is reasonably calculated to lead to the discovery of admissible evidence.'" *Id.* (quoting *Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 820 (5th Cir. 2004)).

After a party has attempted in good faith to obtain discovery without court action, that party may move for an order compelling disclosure or discovery. FED. R. CIV. P. 37(a)(1). "The Court must balance the need for discovery by the requesting party and the relevance of the discovery to the case against the harm, prejudice or burden to the other party." *Cmedia, LLC v. LifeKey Healthcare, LLC*, 216 F.R.D. 387, 389 (N.D. Tex. 2003) (quoting *Truswal Sys. Corp. v. Hydro-Air Eng'g, Inc.*, 813 F.2d 1207, 1210 (Fed. Cir. 1987)).

Rule 45(d)(3)(A)(iv) authorizes "the court for the district where compliance is required" to quash a subpoena if it subjects a person, including a non-party, to an undue burden. "A court may find that a subpoena presents an undue burden when the subpoena is facially overbroad." *Wiwa*, 392 F.3d at 818. "Courts give special consideration to the burden posed when subpoenas are sent to nonparties." *Scrum Alliance Inc. v. Scrum, Inc.*, No. 4:20-cv-00227, 2020 WL 6559625, at *1 (E.D. Tex. Nov. 9, 2020).

### III.   Analysis

The Subpoena commands production of documents responsive to five requests:

1. Produce all Communications, Documents, or Information from 2019 to the present that refer to, or relate to, both the State Department, GEC, TET, or persons acting on their behalf and Technology Platforms. For electronically stored information, such documents may be identified through searches that include the following combination of terms (spaces between terms within parentheses should be construed as "or" and "!" should be construed as a wildcard/truncator): ("Atlantic Council", Awan-Khan, Becera, "Defeat Disinfo", DefeatDisinfo, "Disinfo Cloud", DisinfoCloud, @disinfocloud.com, "Eliza Thompson", Frisbie, GEC, "Global Engagement Center", Goux, "National Endowment for Democracy", "NED", Nemr, @park-advisors.com, "Park Advisors", "Park Capital", "Patricia Watts", "Rafia Bulai", Stewart, "tech challenge", "technology engagement", "test bed", testbed, TET) **and** (Alphabet, CPD, disinformation, Facebook, Google, Instagram, LinkedIn, malinformation, MDM, "media literacy," Meta, Microsoft, misinformation, moderation, modulation, Twitter, X, Xandr, YouTube).

3

2. Produce all Communications, Documents, and Information from 2019 to the present that refer to, or relate to, the U.S.-Paris Tech Challenge, including, but not limited to, financial records related to the receipt and spending of the U.S.-Paris Tech Challenge Award, and any deliverables created as part of the Award.

3. Produce all Communications, Documents, and Information from 2019 to the present concerning or arising from Your participation in the U.S.-Paris Tech Challenge, which refer to, or relate to, the Dynamic Exclusion List, Media Buying Audits, Publisher Vetting, or Media Market Reviews.

4. Produce all Communications, Documents, and Information from 2019 to the present that refer to, or relate to, any Award received, in whole or in part, from the State Department, the negotiation and application of any limitations placed on an Award, and the use of or benefits resulting from any Award. For electronically stored information, such documents may be identified through searches that include the following combination of terms (spaces between terms within parentheses should be construed as "or" and "!" should be construed as a wildcard/truncator): ("Atlantic Council", Awan-Khan, Becera, "Defeat Disinfo", DefeatDisinfo, "Disinfo Cloud", DisinfoCloud, @disinfocloud.com, "Eliza Thompson", Frisbie, GEC, "Global Engagement Center", Goux, "National Endowment for Democracy", NED, Nemr, @park-advisors.com, "Park Advisor", "Park Capital", "Patricia Watts", "Rafia Bhulai", Stewart, "State Department", "tech challenge", "technology engagement", "test bed", testbed, TET) **and** (agree!, assess!, award!, budget!, competition, deliverable, develop!, evaluat!, finding!, grant!, invoice, license, money, prize, contract, proposal, result, SOW, "statement of work", "sub grant", sub-grant, subgrant, sum, test, transfer).

5. Produce all Communications, Documents, and Information from 2019 to the present that that [sic] refer to, or relate to, any product, service, tool, or technology, You create or offer including, but not limited to the Dynamic Exclusion List, Media Buying Audits, Publisher Vetting, or Media Market Reviews, that refers or relates to, in whole or in part, Bentkey, The Daily Wire, FDRLST Media, The Federalist, @RealDailyWire, @FDRLST, Andrew Klavan, Ben Shapiro, Brett Cooper, Candace Owens, Denise DiStephan, Jack Brewster, Jeremy Boreing, John Gregory, Jordan Peterson, Kevin Gross, Matt Walsh, Michael Knowles, Mollie Hemingway, Sean Davis, Ben Domenech, "What is a Woman," or Zack Fishman. For electronically stored information, such documents may be identified through searches that include the following combination of terms (spaces between terms within parentheses should be construed as "or" and "!" should be construed as a wildcard/truncator): ("Andrew Klavan", "Ben Domenech", "Ben Shapiro", Bentkey, Blaze, "Brett Cooper", "Candace Owens", "Daily Wire", "Denise DiStephan", DW, DW+, FDRLST, Federalist, "HR 20", HR20, "HR-20", H.R.20, "H.R. 20", "Jack Brewster", "Jeremy Boreing", "John Gregory", "Jordan Peterson", "Kevin Gross", "Matt Walsh", "Michael Knowles", "Mollie Hemingway", "Mollie Hemmingway", "Molly Hemingway", "Molly Hemmingway", "Sean Davis", Texas, "The Federalist", "What is a Woman", "Zach Fishman", @FDRLST, @RealDaily Wire), **and** (Albany, algorithm, "Alliance for Secure Democracy", Alphabet, ASD, "Atlantic Council", Audit, "Countering

>> Propaganda", CPD, CredCatalog, Data, DEL, DFRL, "Digital Forensic Research Lab", "Disinformation Intelligence", "Disinformation Risk", "Dynamic Exclusion List", EIP, "Election Integrity Project", Facebook, "Fighting Disinformation Online", "Full Fact" Poynter, "Lead Fact", GARM, "Global Alliance for Responsible Media", Google, Hub, Index, Instagram, "Journalism Trust Initiative", JTI, LinkedIn, "Media Market", MediaWell, Meta, Microsoft, "Misinformation Review", NYU, "Open Source Intelligence", "Open-Source Intelligence", OSINT, platform, Policy, portal, Publisher, Research, Screen!, Stanford, "Twitter" "X", "University of Washington", UW, Vet!, "Virality Project", WFA, "World Federation of Advertisers", Xandr, YouTube).

Dkt. 1-1 at 14-17. Although the Subpoena commands production of all responsive documents from 2019 to the present, Plaintiffs agreed to narrow the requests to the years 2020-22 after conferring with DI and state that the lists of search terms are "meant only to be helpful suggestions." Dkt. 9 at 4.

DI is the U.S.-based affiliate of Disinformation Index Ltd. ("GDI"), a not-for-profit company based in London. Dkt. 5-1 ¶¶ 2, 6. DI submits a declaration from GDI co-founder Daniel Rogers averring that several statements in Plaintiffs' complaint and preliminary injunction motion are incorrect. DI explains that the "only State Department funding for any DI-related entity has come in form of two specific grants." Dkt. 5 at 3. Rogers states that GDI received a $100,000 award in 2021 as a finalist in the U.S.-Paris Tech Challenge, a collaboration among the GEC and European organizations including NATO that "sought to fund organizations based in the European Economic Area and the United Kingdom to advance the development of technologies that combat disinformation and propaganda globally." Dkt. 5-1 ¶ 3. GDI used the funding to add language capabilities in Chinese, Japanese, Korean, Vietnamese, Russian, and Ukrainan. *Id.* ¶¶ 5-6. Rogers states that DI received no funding from the U.S.-Paris Tech Challenge. *Id.* ¶ 6. GDI also received a grant from the National Endowment for Democracy ("NED") for work outside the United States and in non-European languages. *Id.* ¶ 12.

GDI states that it "has now produced all relevant materials: documents relating to federally funded projects, including the U.S.-Paris Tech Challenge grant and the funding from the National

Endowment for Democracy ('NED') that are the subject of the *Daily Wire* litigation. There is nothing more to compel." Dkt. 5 at 3. In reply, Plaintiffs argue that their Requests Nos. 1 and 5 seek broader information intended to show that Defendants "engaged in *ultra vires* or unconstitutional outreach to social media companies and/or that Defendants' efforts were successful," and that such conduct harmed them. Dkt. 9 at 3.

The Court finds that these requests to non-party DI are facially overbroad and disproportionate to the needs of the case and the importance of the discovery in resolving the issues, for the reasons DI states in its specific objections to them. Those include objections to the requirements to search all "electronically stored information," to produce "all Communications, Documents, or Information" over a three-year period, and to produce "all Communications, Documents, and Information . . . that refer to . . . any product, service, tool, or technology, You create or offer . . . [that] relates to" 23 listed terms. Dkt. 1-2 at 15-16, 22. Because these requests are facially overbroad and disproportionate to the likely benefit of the proposed discovery from non-party DI, they are unduly burdensome. *Wiwa*, 392 F.3d at 818.

## IV.   Conclusion

For these reasons, Plaintiffs' Motion to Compel Discovery from Subpoena Recipient Disinformation Index, Inc. (Dkt. 1) is **DENIED**.

**IT IS ORDERED** that the Clerk **REMOVE** this case from this Magistrate Judge's docket and **RETURN** it to the docket of the Honorable District Court.

**SIGNED** on November 6, 2024.

_____
SUSAN HIGHTOWER
UNITED STATES MAGISTRATE JUDGE